**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

ZMCC PROPERTIES LLC,

     Plaintiff,

v.                                         Case No. 19-12428

PRIMEONE INSURANCE COMPANY,

     Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT**

Plaintiff ZMCC Properties LLC brings this action for breach of contract and

reformation. (ECF No. 28, PageID.736-47.) Defendant PrimeOne Insurance Co. refused

to compensate Plaintiff for fire damage under a property insurance policy. (*Id.*,

PageID.736.) Plaintiff did not own the property at the time of the fire, (*id.*, PageID.730-

31), and Defendant asserts that the fire was intentionally set and fraudulent. Defendant

declined to pay either the policyholder, Edition BC Owners, LLC ("Edition"), who

occupied the property, or Plaintiff. (*Id.*, PageID.735-36.)

Defendant has filed a motion for summary judgment, claiming the insurance

policy is void due to fraud. (ECF No. 34.) Plaintiff has filed a motion for partial summary

judgment. (ECF No. 32.) It argues that a policy endorsement modified the insurance

contract in a way that could potentially expand Plaintiff's coverage. The motions have

been thoroughly briefed. (ECF Nos. 37, 40, 44, 45.) The court has reviewed the record

and does not find a hearing to be necessary. E.D. Mich. LR 7.1(f)(2). For the reasons

provided below, Defendant's motion will be denied and Plaintiff's motion will be granted.

## I.   BACKGROUND

The following facts are taken from the record established by both parties, and

each material fact is either agreed upon or lacks contradictory evidence.

Plaintiff is a Michigan corporation owned at least in part by Ziyad Zora. (ECF No.

34, PageID.1018; ECF No. 37, PageID.1259.) Zora is also the principal for ZMCC Inc.,

which previously operated an adult entertainment business at the covered property.

(ECF No. 34, PageID.1018; ECF No. 37, PageID.1259) Plaintiff owned the covered

property while ZMCC Inc. operated the business. (ECF No. 34-10, PageID.1115; ECF

No. 34, PageID.1019.)

Zora's adult entertainment business had repeated instances of statutory and

regulatory violations. On November 15, 2014, ZMCC Inc. was charged with twenty-two

violations of state law and Detroit city code. (ECF No. 34-4, PageID.1047-55.) On April

1, 2015, an administrative law judge found that ZMCC Inc. had committed all twenty-two

violations. (*Id.*) Among other offenses, ZMCC Inc. apparently permitted the sale of

controlled substances on its business premises, employed illegal dancers, and

employed workers engaging in indecent exposure. (*Id.*) ZMCC Inc. was fined and

received a short license suspension. (*Id.*, PageID.1055-56.)

On November 9, 2015, ZMCC Inc. and Zora were issued a Notice of Intent to

Suspend/Revoke Business License. (ECF No. 34, PageID.1018; ECF No. 37,

PageID.1259; ECF No. 34-5, PageID.1069.) A hearing was held before the City of

Detroit, Buildings, Safety, Engineering and Environmental Department, and on February

2

11, 2016, ZMCC Inc.'s business license was revoked for a period of three months. (ECF No. 34-6, PageID.1073.) Zora was permitted to reapply for a license after the suspension so long as he stipulated to restrictions on ZMCC Inc.'s business operations. (*Id.*; ECF No. 34, PageID.1018; ECF No. 37, PageID.1259.) The hearing officer noted significant evidence of illegal drug use, indecent exposure, and violations of nude dancing regulations. (ECF No. 34-6, PageID.1075.) ZMCC Inc. appealed the decision to Wayne County Circuit Court, which affirmed the license revocation on August 13, 2016. (ECF No. 34, PageID.1019; ECF No. 37, PageID.1260.) On August 24, 2016, Detroit Police confiscated ZMCC Inc.'s and Zora's business license and closed their operations. (ECF No. 34, PageID.1019; ECF No. 37, PageID.1260.)

Soon after the City of Detroit decided on February 11, 2016, to revoke the business license, Plaintiff and ZMCC Inc. entered into negotiations with third parties to sell the property and business. (ECF No. 34-10, PageID.1136-39.) On October 17, 2016, in a series of agreements, ZMCC Inc. closed the sale of its adult entertainment business to Edition and Plaintiff closed the sale of the property to Conant Property Management ("Conant"). (ECF No. 34, PageID.1019-20; ECF No. 37, PageID.1260.) Zora signed the land contract on behalf of Plaintiff, and Edition was named as a guarantor. (ECF No. 34-11, PageID.1143; ECF No. 32-4, PageID.880-81.)

Plaintiff's land contract required that it be "named as an additional insured on [an] insurance policy" for the property. (ECF No. 32-4, PageID.878; ECF No. 32, PageID.817-18; ECF No. 40, PageID.1400.) An insurance agent for Edition and Conant contacted Defendant to obtain a package property and commercial liability insurance policy. On October 10, 2016, the agent submitted forms to obtain a policy quote. (ECF

No. 34-13.) As part of the application for commercial liability protection, the form asked if "any crimes [have] occurred or been attempted on your premises within the last three (3) years." (*Id.*, PageID.1167.) The answer provided was "no." (*Id.*) This initial set of forms was unsigned. (*Id.*) Defendant responded to the form on October 12, 2016, and a quote was issued. (ECF No. 32-7, PageID.902-04; ECF No. 32, PageID.819; ECF No. 40, PageID.1400.)

On October 13, 2016, Edition's insurance agent responded to the quote, accepted its prices, and provided Defendant additional signed forms. (ECF No. 32-7, PageID.902-10; ECF No. 32, PageID.819; ECF No. 40, PageID.1400.) The form listed Plaintiff as an "additional insured" and "loss payee." (ECF No. 32-7, PageID.908.) Defendant soon thereafter issued a policy naming Edition as the insured for the property and commercial liability insurance. (ECF No. 32-8, PageID.912.) Plaintiff was named as an "additional insured" for the commercial liability coverage and a "loss payee" for the property insurance. (*Id.*, PageID.917-19.) The policy covered from October 13, 2016 to October 13, 2017. (*Id.*, PageID.912.)

The criminal activity appears to have continued after Edition assumed ownership of the business. Detroit Police were summoned in at least ten incidents requiring police response on the insured property between October 2016 and October 2017. (ECF No. 34, PageID.1022; ECF No. 37, PageID.1263-64.) Reports include an arrest of a security guard for possessing an illegal firearm, club security trapping a woman in a room and taking her car keys and her concealed firearm, brandishing of firearms, a woman requiring medical assistance after "someone gave her some type of pill," and a "shoot

out" with assault rifles. (ECF No. 34-18, PageID.1188, 1227, 1211, 1225, 1215, 1206, 1200.)

On October 12, 2017, Edition applied to renew its policy with Defendant for another year. (ECF No. 37-6.) The application form presented by Defendant specifically asked Edition to list the "[n]umber of police calls within the past year" and "describe" them "in detail." (ECF No. 37-6, PageID.1340.) Edition provided no response. (*Id.*) The application also did not identify Plaintiff as an "additional insured" or "loss payee." (*Id.*, PageID.1339.)

Defendant renewed the policy for October 13, 2017, to October 13, 2018. (ECF No. 32-11, PageID.943.) Unlike when the policy was first issued, Plaintiff was included for neither property nor commercial liability insurance. (ECF No. 32, PageID.820; ECF No. 40, PageID.1400.)

On March 7, 2018, the building was damaged in a fire. (ECF No. 32, PageID.820; ECF No. 40, PageID.1400.) A week after the fire, on March 15, 2018, an agent contacted Defendant and asked that Plaintiff be added as a "mortgagee" and "loss payee" (ECF No. 32, PageID.821; ECF No. 40, PageID.1400.) Defendant agreed and issued two endorsements. (ECF No. 32, PageID.821; ECF No. 40, PageID.1400.) Endorsement # 1 named Plaintiff as a mortgagee for the commercial liability insurance. (ECF No. 32-13, PageID.960-61.) Endorsement # 2 named Plaintiff as a loss payee for the property insurance. (*Id.*, PageID.962-63.)

On March 15, 2019, Plaintiff and Defendant began to discuss Plaintiff's rights to payment under the insurance policy as a result of the March 7, 2018, fire. (ECF No. 32, PageID.821; ECF No. 40, PageID.1401.) On March 26, 2019, Defendant issued

Endorsement # 4.[1] (ECF No. 32, PageID.822; ECF No. 40, PageID.1401.) The endorsement retroactively named Plaintiff a "lender's loss payee" for the October 2017 to October 2018 policy. (ECF No. 32-17, PageID.976-77.) According to Plaintiff's complaint, this change was significant because "[u]nlike the 'Loss Payable' clause, under the 'Lender's Loss Payable' clause, the acts of the named insured, i.e.[,] EDITION, cannot preclude ZMCC's [Plaintiff's] right to receive loss payment for damage to the BUILDING caused by or resulting from a covered cause of loss, including fire." (ECF No. 28, PageID.734.) Stated differently, Plaintiff claims it would be entitled to payment as a lender's loss payee even if Edition's actions, i.e., arson, precluded Edition from receiving payment.

On June 12, 2019, Defendant issued two new endorsements that reversed the decision to name Plaintiff as a lender's loss payee. (ECF No. 32, PageID.822-23; ECF No. 40, 1401-02.) Endorsement # 5 stated "Endorsement # 4 is Flat Canceled; Coverage is Null and Void." (ECF No. 32-20, PageID.986.) Endorsement # 6 recategorized Plaintiff under a "Contract of Sale" provision for the property insurance; Plaintiff fell outside lender's loss payee coverage. (ECF No. 32-21, PageID.988-89.)

The next day, on June 13, 2019, Defendant denied coverage for Edition, asserting that Edition "set or procured the setting of the fire that damaged the insured property." (ECF No. 32-22, PageID.991.) On June 18, 2019, Plaintiff contacted Defendant and asserted that it was owed payment as a lender's loss payee. (ECF No. 32-23.) Defendant responded on June 25, 2019, stating Plaintiff was properly categorized under the "Contract of Sale" provision. (ECF No. 32-24.) Under that

---

[1]      Endorsement # 3 is not relevant to this case.

provision, Defendant explained, Plaintiff would "recover[] . . . only to the extent that the named insured is entitled to recover under the policy." (*Id.*, PageID.998.)

Plaintiff filed this lawsuit on August 16, 2019. (ECF No. 1.) Discovery is set to conclude on March 8, 2021. (ECF No. 31.)

## II.  STANDARD

To prevail on a motion for summary judgment, a movant must show—point out— that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party bears the initial burden of presentation that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no requirement, however, that the moving party "support its motion with [evidence] negating the opponent's claim." *Id.* (emphasis removed); *see also Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995).

Second, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis removed) (quoting Fed. R. Civ. P. 56(e)). This requires more than a "mere existence of a scintilla of evidence" or "'[t]he mere possibility of a factual dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). For a court to deny summary judgment, "the evidence [must be] such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. All reasonable inferences from the underlying facts must be drawn "in the light most favorable to the party

opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

### III. DISCUSSION

The court will address Defendant's motion for summary judgment and will then turn to Plaintiff's motion for partial summary judgment.

### A. Defendant's Motion for Summary Judgment

Defendant argues that the insurance policy was procured by fraud, making the policy voidable at Defendant's election. (ECF No. 34, PageID.1025-33.) "Insurance policies are contracts." *Bazzi v. Sentinel Ins. Co.*, 502 Mich. 390, 919 N.W.2d 20, 24 (2018). "[C]ommon-law defenses may be invoked to avoid enforcement of an insurance policy, unless those defenses are prohibited by statute." *Titan Ins. Co. v. Hyten*, 491 Mich. 547, 817 N.W.2d 562, 567 (2012). An insurer can raise "a common-law fraudulent-procurement defense." *Meemic Ins. Co. v. Forstson*, --- N.W.2d ----, 2020 WL 4355288, at *8 (Mich. July 29, 2020) (citing *Bazzi*, 919 N.W.2d at 25).

"Where mutual assent does not exist, a contract does not exist," *Quality Prods. and Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 666 N.W. 2d 251, 258 (2003), and "one who has been fraudulently induced to enter into a contract has not assented to the agreement." *Meemic Ins. Co.*, 2020 WL 4355288, at *9 (quoting 26 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 69:1 (4th ed. 1993)). "Thus, a party induced by fraud to enter into a contract may elect to void the contract." 5A Mich. Civ. Jur. *Contracts* § 46 (2020).

The Michigan Supreme Court in *Titan Ins. Co.*, 817 N.W.2d at 567, laid out three different species of fraud. "Michigan's contract law recognizes several interrelated but

distinct common-law doctrines . . . loosely aggregated under the rubric of 'fraud.'" *Id.*

"These doctrines include actionable fraud, also known as fraudulent misrepresentation;

innocent misrepresentation; and silent fraud, also known as fraudulent concealment." *Id.*

Defendant asserts all three as defenses. (ECF No. 34, PageID.1025-27.)

Fraudulent misrepresentation requires proof that: "(1) the defendant made a

material representation; (2) the representation was false; (3) when the representation

was made, the defendant knew that it was false, or made it recklessly, without

knowledge of its truth, and as a positive assertion; (4) the defendant made it with the

intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the

representation; and (6) the plaintiff thereby suffered injury."[2] *Roberts v. Saffell*, 208

Mich. App. 397, 760 N.W.2d 715, 719 (2008) (citing *M&D, Inc. v. W.B. McConkey*, 231

Mich. App. 22, 585 N.W.2d 33, 36 (1998)). A fact is "material" in the insurance context

where knowledge of it would result in "a rejection of the risk or the charging of an

increased premium." *Oade v. Jackson Nat. Life Ins. Co. of Mich.*, 465 Mich. 244, 632

N.W.2d 126, 131 (2001) (quotations removed); *see also* 10 Mich. Civ. Jur. *Fraud and*

*Undue Influence* § 16 (2020) ("A false statement is generally material if it has natural

---

[2]       This standard for the common-law fraud defense is distinct from the standard
Michigan courts apply for fraud exclusion provisions incorporated directly into insurance
contracts. To void a policy based on a fraud exclusion clause, "an insurer must show
that (1) [a] misrepresentation was material, (2) that it was false, (3) that the insured
knew that it was false at the time it was made or that it was made recklessly, without
any knowledge of its truth, and (4) that the insured made the material misrepresentation
with the intention that the insurer would act upon it." *Bahri v. IDS Prop. Cas. Ins. Co.*,
308 Mich. App. 420, 864 N.W.2d 609, 612 (2014) (quotations removed); *accord Fashho
v. Liberty Mut. Ins. Co.*, --- N.W.2d ----, 2020 WL 5580169, at *3 (Mich. Ct. App. Sep.
17, 2020).

tendency to influence, or is capable of influencing, the decision of the decision-making body to which it is addressed.").

By contrast, "[a] claim of innocent misrepresentation is shown where a party detrimentally relies on a false representation in such a manner that the injury inures to the benefit of the party making the misrepresentation. While it is unnecessary to prove that the person making the representation had knowledge that the statements were false, it is necessary to show privity of contract." *Forge v. Smith*, 458 Mich. 198, 580 N.W.2d 876, 883 (1998); *see also Roberts v. Saffell*, 483 Mich. 1089, 766 N.W.2d 288 (2009). Stated differently, the misrepresentation must "inure to the benefit of the party making the misrepresentation," but the alleged victim "is not required to prove that the party making the misrepresentation intended to deceive or that the other party knew the representation was false." *M&D, Inc.*, 585 N.W.2d at 37.

Finally, silent fraud is shown where a party "knew of a material fact but concealed or suppressed the truth through false or misleading statements or actions and with the intent to deceive." *Roberts*, 760 N.W.2d at 720 (2008). "[F]or the suppression of information to constitute silent fraud there must exist a legal or equitable duty of disclosure." *Id.* at 719. "[T]he touchstone of . . . silent fraud is that some form of representation has been made and that it was or proved to be false . . . . [A]t least as applied to fraud cases, there is no general inchoate duty to disclose." *M&D, Inc.*, 585 N.W.2d at 38. Silent fraud most naturally applies where there are "statements . . . made in response to a specific inquiry." *Id.* at 39. "A misleadingly incomplete response to an inquiry can constitute silent fraud." *Alfieri v. Bertorelli*, 295 Mich. App. 189, 813 N.W.2d 772, 775 (2012).

10

### 1. Waiver

In response to Defendant's motion for summary judgment, Plaintiff contends Defendant's fraud defense has been waived. Michigan law imposes enhanced burdens on insurance companies to explain to insureds the reasons for a denial of coverage. "The general rule is that once an insurance company has denied coverage to an insured and stated its defenses, the company has waived or is estopped from raising new defenses." *Smit v. State Farm Mut. Auto. Ins. Co.*, 525 N.W.2d 528, 530 (Mich. Ct. App. 1994). The policy is rooted in equitable concerns that an insurer will abuse its financial leverage by intentionally withholding a defense when the policy is first denied but spring an unforeseen defense, based on different evidence, once litigation is initiated. *See also Dahlmann v. Geico General Ins. Co.*, Case No. 324698, 2016 WL 1125976, at *8 (Mich. Ct. App. Mar. 22, 2016) ("[I]t appears that—under Michigan practice—this doctrine is equitable in nature and applies when it would be unfair to allow an insurer to assert an additional ground for denial after inducing the insured to rely on a different ground for denial to the insured's detriment.").

The doctrine historically evolved from Michigan courts barring insurers from denying coverage to individuals for home and auto loses using new and potentially frivolous justifications. *See Castner v. Farmers' Mut. Fire Ins. Co.*, 50 Mich. 273, 15 N.W. 452 (1883) (mentioning in passing that a fire insurer cannot vary the grounds for denial of coverage after litigation initiated for the burning of individuals' "dwelling-house"); *Popa v. N. Ins. Co. of N.Y.*, 192 Mich. 237, 158 N.W. 945, 946 (1916) (holding an insurer cannot, on the one hand, deny coverage for the burning of an individual's "dwelling house" after an investigation based on lack of liability and then refuse payment

because proof of loss was not provided, a procedural violation); *Johnson v. Yorkshire Ins. Co.*, 224 Mich. 493, 195 N.W. 45, 46 (1923) (holding where "a young man['s]" car caught fire that the insurer could not insist on proofs of loss after conducting a thorough investigation and disclaiming liability). It is still designed primarily to prevent abusive litigation tactics. *See, e.g.*, *Kirschner v. Process Design Assocs., Inc.*, 592 N.W.2d 707, 709 (Mich. Ct. App. 1999) (citing *Meirthew v. Last*, 376 Mich. 33, 135 N.W.2d 353 (1965)) (stating that the doctrine applies where an insurance company defends an insured in litigation but does not inform the insured that it might deny coverage until after the litigation is complete).

The language of the rule appears broad, but "[t]he application of waiver and estoppel is limited." *Id.* Specifically, an insurer "is not estopped from asserting other defenses which did not come to its knowledge prior to the trial, or which it was unable to assert because the matter was under investigation." 14 Mich. Civ. Jur. *Insurance* § 372 (2020); *see also Dahlmann,* 2016 WL 1125976, at *8 ("[A]n insurer may assert a new ground for denial on the basis of newly discovered information."); *accord Esparza v. Citizens Ins. Co. of the Midwest*, Case No. 17-14132, 2018 WL 4520079, at *1 (E.D. Mich. Sep. 21, 2018) (Goldsmith, J.).

Plaintiff argues that Defendant waived any fraud defense because on May 13, 2019, Defendant apparently received a delivery of 1,700 pages of documents from ZMCC Inc. which included, in part, police reports and license suspensions connecting the covered property to criminal activity. (ECF No. 37, PageID.1272.) This, by itself, does not demonstrate that Defendant was aware of the extensive criminal activity and knowingly excluded—waived—the specific defense now asserted. The details of

Edition's alleged fraud are extensive. In fact, the parties in this litigation have spent many months investigating and reviewing the history of Edition and Defendant's relationship and the alleged criminal activity.[3] While Defendant did not go into exquisite detail in its denial letter, Defendant did state that Edition committed "[f]raud and false swearing as it relates to . . . [the] operation and experience of the business." (ECF No. 32-22, PageID.991.) Defendant was not required to go further and present an exhaustive history or bullet-proof legal argument in favor of denial. This is not a case of insurer abuse, and Defendant's assertion of fraud was readily foreseeable. Thus, the doctrines of waiver and estoppel do not prevent Defendant from presenting its fraud defense in a motion for summary judgment.

## 2.  October 2016 Insurance Application Forms

Defendant first argues that the policy is void because Edition misrepresented facts when applying for insurance in October 2016. (ECF No. 34, PageID.1027-28.) Specifically, Defendant claims Edition misrepresented the extent of criminal conduct that took place on the covered property. (*Id.*)

Edition's agent submitted a form when requesting a quote in October 2016. (ECF No. 34-13.) The form specifically asked if "any crimes [have] occurred or been attempted on your premises within the last three (3) years." (*Id.*, PageID.1167.) Edition answered "no." (*Id.*) There is substantial evidence that crimes took place on covered premises. An administrative law judge in April 2015 found ZMCC Inc., who at the time operated the adult entertainment business located on the property, had violated the law

---

[3]     For further detail on Defendant's fraud defense, see *infra* Sections III.A.2 and III.A.3.

at least twenty-two times. (ECF No. 34-4, PageID.1047-55.) ZMCC Inc. and Zoras'
business license was revoked by the City of Detroit in February 2016, and, in doing so,
Detroit officials noted significant evidence of criminal activity. (ECF No. 34-6,
PageID.1073, 1075.)

However, questions of fact remain that preclude granting summary judgment in
favor of Defendant. Fed. R. Civ. P. 56(a). For all species of fraud, Defendant must show
that the misrepresentation was material and that it relied on the misrepresentation.
*Roberts*, 760 N.W.2d at 719-20; *M&D, Inc.*, 585 N.W.2d at 37. Defendant offers the
testimony of its president of operations. The president was asked at a deposition
whether Defendant would have insured the property had he known of the "litany of
criminal activity at the [insured] location," to which the president responded "no." (ECF
No. 34-20, PageID.1238-39.) This supports the conclusion that the alleged
misrepresentations of criminal history were material, i.e., prevented a "rejection of the
risk or the charging of an increased premium," and that Defendant relied on the
misrepresentation when it issued the insurance policy. *Oade*, 632 N.W.2d at 131.

Nonetheless, a finder of fact could question the credibility of the president's
testimony. The alleged misrepresentation occurred when Edition's agent submitted
initial requests for quotes on October 10, 2016. (ECF No. 34-13.) Those forms were
unsigned. (*Id.*, PageID.1167.) Although that information was used to generate a quote
for Edition, (ECF No. 32-7, PageID.902-04; ECF No. 32, PageID.819; ECF No. 40,
PageID.1400), that quote was accepted by Edition in a separate set of forms that were
signed. (ECF No. 32-7, PageID.902-10; ECF No. 32, PageID.819; ECF No. 40,
PageID.1400.) Defendant's president of operations at a deposition agreed that only

14

portions of the application that were signed "were . . . used for purposes of writing the policy." (ECF No. 37-9, PageID.1352.) The president continued, stating that information included in signed documents would "supersede" unsigned documents. (*Id.*) A reasonable juror reviewing this record could conclude that Edition's October 10 form submissions, which were made at the initial stages of Edition's negotiations with Defendant, and which were provided without signatures, did not materially influence Defendant's decision to issue the policy starting in October 2016 at the premium levels Defendant charged. *Anderson*, 477 U.S. at 248; *Roberts*, 760 N.W.2d at 719-20; *M&D, Inc.*, 585 N.W.2d at 37.

Further, the alleged misrepresentations in the October 10, 2016, forms were made to obtain the October 2016 to October 2017 insurance policy. (ECF No. 32-8, PageID.912.) The fire at issue took place on March 7, 2018, (ECF No. 32, PageID.820; ECF No. 40, PageID.1400), and the renewed insurance policy for the period from October 2017 to October 2018 was in place at the time. (ECF No. 32-11, PageID.943.) In order to issue the renewal policy, Defendant required that Edition submit separate forms though a separate application process. (*See* ECF No. 37-6.) The policy issued for October 2016 to October 2017 was not automatically rolled over, and material terms, such as Plaintiff's status as an additional insured, were changed. (ECF No. 32, PageID.820; ECF No. 40, PageID.1400.) As Plaintiff explains, "nothing in the 2017 application for insurance or the 2017-2018 policy itself states the 2017-2018 policy was subject to . . . representations made in the 2016-2017 application for insurance." (ECF No. 37, PageID.1283.) Although not explicitly articulated, Defendant appears to argue that it would have refused to have issued the 2017 renewal policy had Edition included

a full criminal history in the October 10, 2016, form. A reasonable juror could disagree. *Anderson*, 477 U.S. at 248. A juror could observe that the 2017 to 2018 policy was a separate and distinct contract issued a year after the alleged misrepresentation and that the criminal history taking place on the insured premises prior to October 2016 would not have impacted the decision to issue the 2017 renewal policy.

This is especially true given that Plaintiff has produced emails from September 2016, before the initial policy was issued, indicating that Defendant was aware ZMCC, Inc. and Zora had their liquor license revoked by the State of Michigan. (ECF No. 37-8, PageID.1348.) Revocation of a liquor license reasonably implies some form of illegal activity. If Defendant accepted the risk of the policy with such information in September 2016, a reasonable juror could conclude that Defendant would have issued the policy in October 2017 even if it had known of the illegal activity taking place on the premises over a year prior. *Anderson*, 477 U.S. at 248.

Finally, Plaintiff asserts that the answer given on the October 10, 2016, forms was not false. (ECF No. 37, PageID.1285-86.) Falsehood is a necessary element for all theories of fraud. *Roberts*, 760 N.W.2d at 719-20; *M&D, Inc.*, 585 N.W.2d at 37. The form asked if "any crimes [have] occurred or been attempted on *your* premises within the last three (3) years." (*Id.*, PageID.1167 (emphasis added).) The form did not ask whether criminal activity took place on "the" premises, and Plaintiff argues "your" limits the inquiry to crimes taking place while Edition had control over the property. (ECF No. 37, PageID.1285-86.) The sale of the adult entertainment business to Edition closed on October 17, 2016, after the form was submitted. (ECF No. 34, PageID.1019-20; ECF No. 37, PageID.1260.) Although Defendant did not address this issue in its briefing,

when asked whether the language "your premises" implies "the premises," Defendant's president stated: "depending on how you read your premises, it is the same premises." (ECF No. 37-9, PageID.1353.) A finding that a statement is false is an objective determination. "[A] subjective misunderstanding of information that is not objectively false or misleading cannot mean that a [party] has committed . . . [a] fraudulent misrepresentation." *Hord v. Env't Rsch. Inst. of Mich.*, 463 Mich. 399, 617 N.W.2d 543, 549 (2000). Even if Defendant subjectively believed the question applied to "the same premises," (ECF No. 37-9, PageID.1353), a reasonable juror could decide otherwise. *Anderson*, 477 U.S. at 248. The court will not resolve this question of interpretation through summary judgment, and Defendant's motion with regard to the October 2016 application form will be denied. Fed. R. Civ. P. 56(a).

### 3. October 2017 Insurance Application Forms

Defendant argues that the policy is voidable as a matter of law due to misrepresentations allegedly made when Edition applied to renew its insurance in October 2017. (ECF No. 34, PageID.1028-32.)

In the insurance forms Editions submitted in October 2017, Defendant asked that Edition list the "[n]umber of police calls within the past year" and "describe" them "in detail." (ECF No. 37-6, PageID.1340.) Edition provided no response. (*Id.*) Defendant is correct that the doctrine of silent fraud could apply to these facts. It made an explicit request for Edition to identify criminal activities, and no crimes were listed, despite Detroit police being called to the premises at least ten times. *See M&D, Inc.*, 585 N.W.2d at 38 (Silent fraud can apply where "statements [are] . . . made in response to a specific inquiry.")*; Alfieri*, 813 N.W.2d at 775 (denying a defendant's motion for summary

disposition on a claim of silent fraud where the plaintiff "made direct inquiries . . . about the condition of property" at issue); *Pioneer State Mut. Ins. Co. v. Shadowens*, Case No. 343716, 2019 WL 6048586, at *3 (Mich. Ct. App. Nov. 14, 2019) (holding, under the doctrine of silent fraud, that an insured "had a duty to fully and accurately respond to direct inquires by [an insurer]" in the context of issuing an insurance policy). (ECF No. 34-18, PageID.1188, 1227, 1211, 1225, 1215, 1206, 1200.)

However, silent fraud, like fraudulent misrepresentation, requires a showing that Edition intended to deceive Defendant. *Roberts*, 760 N.W.2d at 719-20. Defendant has presented little evidence of Edition's intent. Instead, Defendant simply implies that because Edition operated the adult entertainment business on the covered property, it must have intended to hide its criminal history when the renewal forms were submitted in October 2017. (ECF No. 34, PageID.1028-30.) But a reasonable juror could disagree. *Anderson*, 477 U.S. at 248. Generally, "[w]hether a party possesses the requisite intent is a question of fact." *United States v. Cello-Foil Prods, Inc.*, 100 F.3d 1227, 1233 (6th Cir. 1996). A juror could find, as Plaintiff argues, that Edition was careless and unintentionally excluded this information. (ECF No. 37, PageID.1280.) This explanation would be bolstered by the fact the Edition failed to include Plaintiff as an additional insured, despite including Plaintiff in the initial insurance policy and Defendant subsequently issuing an endorsement to add Plaintiff to the renewal. (ECF No. 32, PageID.820; ECF No. 40, PageID.1400; ECF No. 32-8, PageID.917-19; ECF No. 32-13, PageID.962-63.) Edition also did not answer other questions on the October 2017 forms, including whether "the risk [is] located on or near a college campus." (ECF No. 37-6, PageID.1343.)

18

Defendant asserts that the policy is void as an innocent misrepresentation. (ECF No. 34, PageID.1030-32.) As Defendant explains, this theory does not require proof "that [Edition] intended to deceive or . . . knew [its] representation[s] [were] false." *M&D, Inc.*, 585 N.W.2d at 37. *M&D, Inc.*, 585 N.W.2d at 37. (ECF No. 34, PageID.1030-32.) However, the innocent misrepresentation doctrine carries with it the materiality and reliance elements of traditional fraud. *See M&D, Inc.*, 585 N.W.2d at 37; *U.S. Fid. and Guar. Co. v. Black*, 412 Mich. 99, 313 N.W.2d 77, 85-86 (1981) (applying the innocent misrepresentation doctrine where a party "unintentionally . . . misrepresented a material fact"). Edition provided Defendant an incomplete response in the October 2017 forms, but Defendant still issued a renewed policy. (ECF No. 37-6, PageID.1340.) There is no evidence Defendant followed up or asked Edition to complete the answers, or that Defendant expressed concern at the time of the renewal that Edition's application lacked important information. While the incomplete answers could equate to fraud, a reasonable juror could also conclude that the information sought was not material and did not impact Defendant's decision to issue the policy in October 2017. *Anderson*, 477 U.S. at 248. Summary judgment on this issue will not be granted, and Defendant's motion will be denied.

### B. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for summary judgment on the legal effect of Endorsement # 4, Endorsement # 5, and Endorsement #6. (ECF No. 32.) It argues Endorsement # 4 is a valid modification of the insurance contract while Endorsement # 5 and Endorsement # 6 are unenforceable.

19

**1.  Endorsement # 4**

When Defendant issued Edition a renewal policy in October 2017, Plaintiff was

not included as an additional insured. (ECF No. 32, PageID.820; ECF No. 40,

PageID.1400.) An agent contacted Defendant on behalf of Plaintiff days after the fire in

March 2018 and asked that Plaintiff be added to the policy. (ECF No. 32, PageID.821;

ECF No. 40, PageID.1400.) The agent explained that the additional insureds, including

Plaintiff and Conant, were intended to be carried over in the renewal policy

automatically and were left out of the renewal application. (ECF No. 32-12,

PageID.953.) In response, Defendant issued Endorsement # 1 and Endorsement # 2,

which retroactively added Plaintiff to the October 2017 to October 2018 property

insurance policy as a loss payee, not as a lender's loss payee. (ECF No. 32-13.)

Almost a year later, in March 2019, Plaintiff and Defendant began discussions on

the nature of Plaintiff's rights to recovery from the March 2018 fire. (ECF No. 32,

PageID.821; ECF No. 40, PageID.1401.) On March 26, 2019, Defendant issued

Endorsement # 4, which named Plaintiff as a lender's loss payee for the 2017 to 2018

insurance policy. (ECF No. 32, PageID.822; ECF No. 40, PageID.1401; ECF No. 32-17,

PageID.976-77.)

Plaintiff claims Endorsement # 4 modified the insurance contract. "[T]he freedom

to contract . . . permits parties to enter into new contracts or modify their existing

agreements." *Quality Prods. and Concepts Co.*, 666 N.W. 2d at 258. A valid

modification "must be by mutual consent." *Kloian v. Domino's Pizza LLC*, 733 N.W.2d

766, 771 (Mich. Ct. App. 2006). "[A] modification will be considered mutual if it is

established through clear and convincing evidence of a written agreement establishing

20

a mutual agreement to waive the terms of the original contract." *Adell Broad. v. Apex Media Sales*, 708 N.W.2d 778, 782 (Mich. Ct. App. 2005); *Quality Prods. and Concepts Co.*, 666 N.W. 2d at 258 ("Upon proof of an express oral or written agreement, the mutuality requirement is clearly satisfied."). If the modification is "in writing and signed by the party against whom it is sought to enforce the . . . modification," consideration is not necessary. Mich. Comp. Laws § 566.1; *see Adell Broad.*, 708 N.W.2d at 782.

Uncontradicted evidence shows that Plaintiff contacted Defendant regarding the nature of its coverage and expressed belief that it was a mortgagee, and thus covered as a lender's loss payee. (ECF No. 32, PageID.821; ECF No. 40, PageID.1401; ECF No. 32-14; ECF No. 32-13, PageID.964.) Internal emails at Defendant's firm indicated that it understood this request and believed Plaintiff was properly classified as a lender's loss payee. In emails from an underwriter to Defendant's president of operations, the underwriter stated Plaintiff was listed "as a Loss Payee, not a Mortgagee/Lender's Loss Payee," but asked if Plaintiff "should . . . have been listed as a Mortgagee/Lender's Loss Payee." (ECF No. 32-16, PageID.972.) The underwriter and Defendant's president discussed the issue in person and confirmed via email "that the subject policy should be endorsed to include [Plaintiff] as [a] lender's loss payee[]." (*Id.*, PageID.974.) The March 26, 2019, endorsement Defendant then issued was unambiguous: Plaintiff was a "Lender's Loss Payee" for the property insurance policy issued on "10/13/2017." (ECF No. 32-17, PageID.976-77.) The endorsement was signed by Defendant's "Authorized Representative." (*Id.*, PageID.976.) On May 24, 2019, Defendant's president confirmed with Edition's agent via email that "we [Defendant] have concluded that . . . [Plaintiff]

21

should have been listed as a Lender's Loss Payee, not as a Loss Payee." (ECF No. 32-18, PageID.979.)

Defendant issued an unambiguous written statement modifying the terms of the insurance policy. It is undisputed that Defendant agreed to the terms and intended in March 2019 to issue Endorsement # 4. The agreement was signed by Defendant and did not require consideration. *See* Mich. Comp. Laws § 566.1. Plaintiff has presented clear evidence of a "written agreement establishing a mutual agreement to waive the terms of the original contract." *Adell Broad.*, 708 N.W.2d at 782 (holding a modification existed as a matter of law where "the parties waived certain terms of their original agreement in a signed writing"); *Kloian*, 733 N.W.2d at 771 (finding a valid modification where the parties indisputably exchanged emails agreeing to a change in terms); *Home-Owners Ins. Co. v. Perkins*, 939 N.W.2d 705, 714 (Mich. Ct. App. 2019) (declining to find as a matter of law that an insurance policy had been modified after noting the parties had not "expressly waived [the insurance policy term]"). Summary judgment is warranted. Fed. R. Civ. P. 56(a)

Defendant does not directly contest these conclusions. Instead, it argues Plaintiff was aware that it was not named in the renewal policy and asked to be added to the policy only after the fire took place. (ECF No. 40, PageID.1406-07.) Defendant does not explain how this is legally significant, and the court is not convinced that Plaintiff's initial reaction to the renewal policy is at all relevant to the parties' agreed upon modification in Endorsement # 4.

Further, Defendant acknowledges that it "approved the issuance of Endorsement # 4" but still contends that it did not "fully appreciate" the nature of Plaintiff's relationship

with Edition. (*Id.*, PageID.1407.) According to Defendant, Plaintiff is not best categorized as a lender's loss payee and should have been kept as a loss payee or a contractor for sale. (*Id.*) But Defendant agreed in an explicit written agreement that Plaintiff would be categorized as a lender's loss payee. (ECF No. 32-17, PageID.976-77.)

Defendant's argument that it did not fully understand the consequences of its actions amounts to an attempt to retract its contractual agreement *post hoc*. Defendant is an insurance company, far from an unsophisticated participant. "[T]he law presumes that the parties understand the import of a written contract and had the intention manifested by its terms." *Burkhardt v. Bailey*, 680 N.W.2d 453, 464 (Mich. Ct. App. 2004) (quotations removed). "[O]ne who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms." *Smith Living Trust v. Erickson Ret. Cmty.*, 928 N.W.2d 227, 239 (Mich. Ct. App. 2018) (quoting *Int'l Transp. Ass'n Bylenga*, 254 Mich. 236, 236 N.W. 771, 772 (1931)). A unilateral mistake as to "the legal effect of [a] contract" is not a recognized defense absent fraud or rare inequitable circumstances. *Johnson Family Ltd. v. White Pine Wireless, LLC*, 761 N.W.2d 353, 363 (Mich. Ct. App. 2008); *Casey v. Auto Owners Ins. Co.*, 729 N.W.2d 277, 285 ("A unilateral mistake is not sufficient to warrant reformation."). Defendant made a business decision to issue an unambiguous modification, and it cannot now escape the obligations because, in retrospect, it finds the decision ill-advised or unwarranted.

## 2. Endorsement # 5 and Endorsement # 6

Plaintiff argues that the endorsements issued after Endorsement # 4 are unenforceable. Endorsement # 5 and Endorsement # 6 were issued the day before

Defendant denied coverage for Edition. (ECF No. 32, PageID.822-23; ECF No. 40, 1401-02.) Defendant sought to void Endorsement # 4 and recategorize Plaintiff's coverage under a "Contract of Sale" clause, which precludes Plaintiff's coverage as a lender's loss payee. (ECF No. 32-20, PageID.986; ECF No. 32-21, PageID.988-89.)

However, all contracts, including contract modifications, require "mutual consent." *See Kloian*, 733 N.W.2d at 771. Thus, "the principle of freedom to contract does not permit a party unilaterally to alter [a] contract." *Quality Prods. and Concepts Co.*, 666 N.W. 2d at 253; *accord 46th Cir. Trial Ct. v. Crawford Cnty.*, 702 N.W.2d 588, 598 (Mich. Ct. App. 2005), *judgment vacated on other grounds*, 447 Mich. 922, 722 N.W.2d 884 (2006); *see also Harper Woods Retirees Ass'n v. City of Harper Woods*, 879 N.W.2d 897, 902-03 (Mich. Ct. App. 2015) (noting that "unilateral alteration of contracts [are generally] prohibited" and holding that unilateral change of health insurance benefits was not legally permissible).

Plaintiff contends that the decision to revoke Endorsement # 4 "was made without Plaintiff's knowledge or consent." (ECF No. 32, PageID.831.) It points to testimony from Defendant's president of operations, who stated that he arrived at the conclusion to remove Plaintiff as a lender's loss payee "[j]ust based on discussions with [Defendant's underwriter], [Defendant's attorney], and [him]self." (ECF No. 32-25, PageID.1007.) Defendant, in response, does not present evidence to create a genuine question of fact. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Defendant cites no evidence that it consulted or discussed Endorsement # 5 or Endorsement # 6 with Edition or Plaintiff, and there is no record that any party other than Defendant consented to the removal of Plaintiff as a lender's loss payee. Endorsement # 5 and Endorsement

# 6 were unilateral modifications, and, as a matter of law, they are unenforceable. Fed.

R. Civ. P. 56(a); *Quality Prods. and Concepts Co.*, 666 N.W. 2d at 253. Plaintiff's motion

for partial summary judgment will be granted.

## IV. CONCLUSION

Questions of fact remain as to whether Defendant may void the insurance policy

due to fraud. However, as a matter of law, Endorsement # 4 was a valid contract

modification, and Endorsement # 5 and Endorsement # 6 cannot be enforced.

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment (ECF No. 34)

is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment

(ECF No. 32) is GRANTED.

s/Robert H. Cleland                                    /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  March 8, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, March 8, 2021, by electronic and/or ordinary mail.

s/Lisa Wagner                                    /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\19-12428.ZMCC.CrossMotionsforSummaryJudgment.RMK.2.RHC.2.docx